UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO DENTAL SOCIETY,<br><br>    Plaintiff<br><br>v.<br><br>AMERICAN SEMINAR INSTITUTE,<br><br>    Defendant. | Case No.<br><br>FILED: MARCH 26, 2008<br>08CV1748    PH<br>JUDGE KENDALL<br>MAGISTRATE JUDGE SCHENKIER |

<u>COMPLAINT</u>

Plaintiff, Chicago Dental Society ("CDS"), by and through Peter M. Sfikas and Edward M. Graham of Bell, Boyd & Lloyd, LLP, bring the following Complaint against American Seminar Institute ("ASI"):

1. CDS seeks equitable and monetary relief for violations of federal and state law. This Complaint arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and state common law for breach of contract.

## THE PARTIES

2. CDS is an Illinois Not-For-Profit Corporation located at 401 North Michigan Avenue, Chicago, Illinois.

3. ASI is, on information and belief, a private company resident in Colorado and located at 99 Garfield Avenue, Carbondale, Colorado.

## JURISDICTION

4. The Court has jurisdiction over Plaintiff's claims under the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). The Court has jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a nucleus of facts that are common to the federal claims for relief.

5. The Court has personal jurisdiction over Defendant because it conducts business in this district and because Defendant's use of the mark CHICAGO DENTAL SOCIETY has damaged Plaintiff's business and goodwill in this judicial district.

VENUE

6. Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to this Complaint occurred in the Northern District of Illinois and Defendant's business activities subject Defendant to personal jurisdiction in the Northern District of Illinois.

STATEMENT OF FACTS

7. CDS is a professional association with approximately 4,300 members that represents the interests of dentists, promotes the art and science of dentistry, and advocates for improvements in oral healthcare. CDS memberships cover Cook, Lake, and DuPage Illinois counties.

8. CDS owns and enjoys common law rights in Illinois and Colorado and throughout the United States in and to the trademark CHICAGO DENTAL SOCIETY.

9. CDS first began using the CHICAGO DENTAL SOCIETY mark for its goods and services in 1878, when it was incorporated. CDS has spent significant time, effort, and money in advertising and marketing the CHICAGO DENTAL SOCIETY mark and creating consumer demand for and goodwill in membership and other products and services sold under its mark.

10. Among other things, CDS hosts an annual meeting in Chicago for its members and other practitioners called the Chicago Dental Society Midwinter Meeting. During the Chicago Dental Society Midwinter Meeting (the "Midwinter Meeting"), CDS hosts numerous continuing dental education seminars for its members and practitioners. Speakers at the Midwinter Meeting authorize CDS to record and sell the seminars.

11. The Midwinter Meeting is one of the top three dental meetings in the United States and one of the top ten conventions in Chicago, Illinois. The 2008 Midwinter Meeting drew more than 34,500 attendees, including 7,515 dentists.

12. On December 9, 2005, CDS entered into a contract with Digital Conference Providers, Inc. ("DCP") pursuant to which DCP would record and produce audio CDs and CD

ROMs containing seminars presented at the Midwinter Meetings (the "Agreement") for sale to the public. A copy of the Agreement is attached as Exhibit A. Pursuant to the terms of the Agreement, DCP acquired "the exclusive right to produce and market Recording of this material for the term of this agreement." Agreement, Section 7.5. In addition, DCP agreed that the audio CDs produced under the Agreement would prominently feature the session name and convention title, which naturally would identify the sessions as programs of the Chicago Dental Society Midwinter. Agreement, Sections 1.1., 1.2. Moreover, the Agreement provided that the CD ROMs produced by DCP would include all presentation materials and handouts used by speakers at the Midwinter Meetings, which again naturally would identify the sessions as programs of the Chicago Dental Society Midwinter.

13. On March 10, 2008, DCP assigned to CDS all of its rights, title, and interest under the Agreement and in any works produced thereunder, including any receivables from or amounts owed by ASI, for products created and distributed under the Agreement (the "Assignment"). A copy of DCP's Assignment is attached as Exhibit B.

14. ASI purchased Midwinter Meeting audio CDs and CD ROMs from DCP and currently owes $3,145.00 for such purchases from DCP.

15. ASI repackaged the Midwinter Meeting CDs and CD ROMs it purchased from DCP for resale via ASI's interactive Web site located at www.americanseminar.com. The repackaged Midwinter Meeting CDs and CD ROMs were revised to place ASI's name on the materials and to remove CDS' name from the materials.

16. CDS members have purchased such Midwinter Meeting CDs and CD ROMs from ASI.

17. ASI is not selling the product CDS authorized DCP to create and sell.

18. For example, the CD ROMs sold by ASI do not include the original cover page of the handouts, which identify the programs as CDS programs, and now include a questionnaire which, among other things, invites purchasers to "evaluate ASI employees." *Compare* Agreement, Section 1.2.

19. Prior to September 12, 2007, ASI's website and marketing materials did not identify the origin of the Midwinter Meeting audio CDs and CD ROMs as CDS programs. Instead, the statements and representations made in ASI's website and marketing materials, implied that the recordings were ASI programs featuring ASI speakers.

20. As a result, ASI misled the public and harmed the good will CDS has developed in the Midwinter Meeting, Midwinter Meeting seminars, and the Midwinter Meeting CDs and CD ROMs. ASI's actions also caused conflict between CDS and the speakers who participated in the Midwinter Meeting seminars and may endanger their willingness to participate in future programs.

21. On or about September 14, 2007, after CDS complained, ASI added the following statement to its Web site: "ASI Dental Courses are produced by the Chicago Dental Society." In other words, ASI still implies that the Midwinter Meeting CDs and CD ROMs are "ASI Dental Courses."

22. ASI's actions have caused and are likely to continue to cause confusion, or to cause mistake, or to deceive the public.

## COUNT I

(False Representation of Fact in Violation of the Lanham Act – 15 U.S.C. § 1125(a)(1))

23. Plaintiff realleges and incorporates by reference the allegations of Paragraph 1 through 21 as if fully set forth.

24. By altering products it purchased from DCP, ASI falsely or misleadingly represented to consumers that ASI is affiliated or connected or associated with CDS in the production and sale of Midwinter Meeting CDs and CD ROMs by ASI.

25. By altering products it purchased from DCP, ASI falsely or misleadingly represented to consumers that ASI is affiliated or connected or associated with the speakers featured in Midwinter Meeting CDs and CD ROMs sold by ASI.

26. ASI's statement on its Web site that "ASI Dental Courses are produced by the Chicago Dental Society" also falsely or misleadingly represents to consumers and the public at

large that ASI is affiliated or connected or associated with CDS in the production and sale of Midwinter Meeting CDs and CD ROMs by ASI.

27. ASI's actions are likely to deceive or confuse or mislead consumers and the public at large as to the affiliation, connection, or association of CDS with ASI.

28. By reason of ASI's actions, CDS has suffered and will suffer damage to its business, reputation, and goodwill, and will suffer the loss of sales and profits that CDS would have made but for ASI's acts. ASI has been, and will continue to be, unjustly enriched by its unlawful acts.

29. ASI's conduct is, and has been, designed to obtain the benefit of the goodwill and well-established reputation of CDS.

30. ASI's conduct has caused, and is causing, irreparable harm to Plaintiff. Unless this Court enjoins Defendant from making false or misleading representations to consumers and the public at large as set forth above, CDS will continue to suffer irreparable harm.

COUNT II

(Reverse Passing Off in Violation of the Lanham Act – 15 U.S.C. § 1125(a)(1))

31. Plaintiff realleges and incorporates by reference Paragraphs 1 through 30 as if fully set forth.

32. By altering products it purchased from DCP, ASI affixed a false designation of origin, i.e., ASI falsely represented to consumers that the Midwinter Meeting CDs and CD ROMs were produced by ASI.

33. ASI used this false designation of origin in commerce.

34. Pursuant to the terms of the Assignment, CDS has all rights, title, and interest under the Agreement and in any works produced thereunder.

35. ASI's false designation of origin is likely to deceive or confuse or mislead consumers and the public at large as to the affiliation, connection, or association of CDS with ASI.

36. By reason of ASI's false designation of origin, CDS has suffered and will suffer damage to its business, reputation, and goodwill, and will suffer the loss of sales and profits that CDS would have made but for ASI's acts. ASI has been, and will continue to be, unjustly enriched by its unlawful acts.

## COUNT III

(In the Alternative)

(Breach of Contract)

37. Plaintiff realleges and incorporates by reference Paragraphs 1 through 30 as if fully set forth.

38. Pursuant to the terms of the Assignment, CDS possesses all rights, title, and interest under the Agreement and in any works produced thereunder, including any receivables from or amounts owed by ASI for products created and distributed under the Agreement.

39. ASI still owes $3,145.00 for Midwinter Meeting CDs and CD ROMs it purchased from DCP.

40. CDS, as DCP's assignee, has performed all obligations to ASI in connection with ASI's purchase of Midwinter Meeting CDs and CD ROMs.

41. Despite demands, ASI has failed or refused to pay the amounts due and owing in connection with its purchase of Midwinter Meeting CDs and CD ROMs.

WHEREFORE, the Court adjudge and decree that the Defendant has violated 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), that the Court enter an injunction prohibiting the Defendant from continuing to make false or misleading representations to consumers and the public at large, that the court award damages against the Defendant for loss of Plaintiffs sales and profits and damages for Defendants breach of contract and that the Court grant Plaintiff such other, further and additional relief as the nature of the case may require and as the Court deems just and appropriate.

Respectfully submitted,

CHICAGO DENTAL SOCIETY

           /s/Edward M. Graham            
            Edward M. Graham

Peter M. Sfikas  
Edward M. Graham  
**BELL, BOYD & LLOYD LLP**  
Three First National Plaza  
70 W. Madison, Suite 3100  
Chicago, Illinois  60602  
(312) 372-1121

08CV1748   PH
JUDGE KENDALL
MAGISTRATE JUDGE SCHENKIER

# EXHIBIT A

Recording and CD Audio Distribution

# DCP, Inc.



## Agreement between Digital Conference Providers, Inc. (DCP) and The Chicago Dental Society (CDS) to record and produce CD Audio for The CDS Midwinter Meetings, From year 2006 through 2008.

DCP, Inc., 8117 S. Lemont Suite 5 Darien, Illinois 60561 is pleased to provide the following products and services to **The Chicago Dental Society (CDS)**

### 1.0 DELIVERABLES
1.1 Conference Audio CD's:
- Operates in standard CD audio systems (non MP3)
- CD label with the session name, convention title, and DCP's address and telephone number for reorder or replacement.

1.2 Complete Conference CD ROM
- Includes all session audio in MP3 format
- All submitted presentation materials and handouts
- Autorun graphic menu for easy navigation
- Appropriate internet links
- Includes access to "DROPBOX" DCP's data and presentation gathering site (see: http://www.dcproviders.com/pdb.aspx)

### 2.0 RECORDING
2.1 DCP will record designated sessions at the conferences. Each session will be monitored at all times, although an operator may monitor more than one machine DCP uses Marantz 660 digital recording units or equivalent.

2.3 The content of master Recordings will not be edited. However, any superfluous material may be extracted from the Recordings at the discretion of DCP professional staff, or the speaker.

### 3.0 DUPLICATING
3.1 DCP will duplicate Recordings as required for delivery of CD Audios on-site and will provide sufficient equipment and personnel to meet anticipated demand.

3.2 Each Recording will be checked for audio quality, and will be guaranteed against defects for one year from date of purchase. Defective products will be replaced promptly upon receipt of these materials.

### 4.0 ON SITE SALES
4.1 DCP will be responsible for staffing and operating the sales and duplicating area at the meeting. CDS will provide DCP with a highly visible location for the purpose of marketing and selling Recordings.

4.2 DCP will design and print on-site order forms with the CDS logo. Forms will be available at the sales counter and should be provided as inserts into conference registration materials.

4.3 Customers will have the option of having any and all Recordings mailed to their homes or offices. DCP will accept cash, check, Visa, MasterCard, and American Express as payment. Online payment may also be an option if agreed to between the parties.

### 5.0 POST-CONFERENCE
5.1 All Recordings orders taken at the conference will be shipped within 10 days after the close of the meeting. DCP will provide 1st-Class postal service to its customers for prompt delivery. All foreign orders will be sent via airmail. Rush shipments available at additional shipping charge.

5.2 CDS will, following the meeting, promote the Recordings to its membership via Web-site or other association materials.

## Recording and CD Audio Distribution

5.3 DCP will provide an on-line ordering option for CDS members. (see: https://www.dcporder.com/qrca/ for an example)

6.0 **FINANCIAL**

6.1 The retail price will be $15.00 (or other mutually agreeable price) per CD Audio (plus shipping). Complete conference CD ROM price to be determined by actual number of sessions and be offered at a discounted price compared to the CD Audio.

6.2 No minimum guarantee is required of CDS.

6.3 DCP will charge customers a shipping/handling charge of $4.00 per order not picked up on site. Recordings mailed overseas will be charged $3.00 per recording (minimum $15.00)

6.4 After Union and patch charges are accounted for CDS will earn:

10% on all combined sales of Audio CDs and CD ROMs up to $5000.00
After $5000.00 CDS will earn 45% on all sales of Audio CDs and CD ROMs

6.5 CDS and DCP hold the mutual option to renegotiate or terminate this agreement with cause. Termination will require 90 day written advance notice. DCP will maintain exclusive distribution rights for previously produced programs for a period of one year after termination. After one year CDS has the option to reclaim master recordings.

6.6 DCP will provide quarterly sale summaries and royalty payments with the following information: Total Audio CD sales, Total MP3 sales, On-site sales, Post-meeting sales and internet sales.

7.0 **OTHER PROVISIONS**

7.1 A complimentary set of Recordings will be provided to CDS and speakers are entitled to one copy of their session for on-site delivery. Additional office or speaker copies will be available to CDS at half the retail price.

7.2 All line fees and union fees are the responsibility of DCP.

7.3 DCP will be responsible for all of its own air and travel related expenses including hotel.

7.4 CDS will provide a secured area nearby for equipment lockup, when hired security is not available.

7.5 CDS will use its best effort to obtain speaker releases. CDS grants DCP the exclusive right to produce and market Recording of this material for the term of this agreement. This does not limit the speaker from producing his/her material as desired.

Agreed this 9th day of December 2005

**Digital Conference Providers, Inc.**

By: _____

Printed Name: Brian Polacek

**The Chicago Dental Society (CDS)**

By: _____ Executive Director

Printed Name: Randall B. Grove

08CV1748   PH
JUDGE KENDALL
MAGISTRATE JUDGE SCHENKIER

# EXHIBIT B

## Assignment

WHEREAS, DIGITAL CONFERENCE PROVIDERS, INC., at 1081 Zygumt Circle, Westmont, Illinois 60559 ("**Assignor**"), pursuant to the contract between Assignor and the Chicago Dental Society dated December 9, 2005 (the "Contract"), acquired certain rights to produce, market, and distribute audio CDs, CD ROMs, and related materials based on scientific programs for the Chicago Dental Society Midwinter Meetings ("**Works**");

WHEREAS, THE CHICAGO DENTAL SOCIETY, an Illinois Not-For-Profit Corporation with offices at 401 North Michigan Avenue, Suite 200, Chicago, Illinois 60611("**Assignee**") wishes to acquire all right, title, and interests Assignor has under the Contract and in the Works produced thereunder, and Assignor wishes to transfer the same to Assignee;

WHEREAS, this Assignment Agreement (this "**Assignment**") shall be deemed effective as of ___3-10___, 2008;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, Assignor hereby transfers, conveys, and assigns to Assignor all of Assignor's right, title, and interest it possesses under the Contract and in the Works produced thereunder, including any receivables from or amounts owed by American Seminar Institute for products created and distributed under the Contract.

This Assignment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, Contributor and Company have executed this Agreement this _10th_ day of _March_, 2008.

**ASSIGNEE:**

By:_____

Name:_____

Its:_____

STATE OF _____ )
                     ) SS.
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this ___ day of _____, 200__
by _____
of _____.

_____
Notary Public
My commission expires _____

**ASSIGNOR:**

By: _[signature]_

Name: _Brian Polacek_

Its: _President_

STATE OF _Illinois_ )
                    ) SS.
COUNTY OF _Will_    )

The foregoing instrument was acknowledged before me this _10th_ day of _March_, 200_8_
by _Brian Polacek_
of _Digital Conference Providers, Inc_.

_[signature]_
Notary Public
My commission expires _12/14/2009_

[OFFICIAL SEAL notary stamp]

578570/C/1