IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO DENTAL SOCIETY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 CV 1748 |
| | ) | |
| vs. | ) | |
| | ) | Judge Kendall |
| AMERICAN SEMINAR INSTITUTE, | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
AMERICAN SEMINAR INSTITUTE'S MOTION TO DISMISS**

Defendant American Seminar Institute ("ASI"), by counsel, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure hereby submits its Memorandum in Support of its Motion to Dismiss Chicago Dental Society's ("CDS") Complaint, as follows:

## I.　　INTRODUCTION

The allegations set forth in Chicago Dental Society's Complaint against ASI fail to state a claim upon which relief can be granted. This cause stems from ASI's sale of CDs and CD ROMs from the Chicago Dental Society's Midwinter Meeting seminar program that it purchased from CDS's authorized agent, Digital Conference Providers ("DCP"). As demonstrated below, CDS's complaint should be dismissed for two reasons. First, this Court lacks personal jurisdiction over ASI. Second, the complaint fails to allege any viable claim under the Lanham Act. Accordingly, Counts I and II of the Complaint are subject to dismissal with prejudice. Consequently Count III would also be dismissed for lack of subject matter jurisdiction.

## II.    THE COMPLAINT'S FACTUAL ALLEGATIONS

CDS is an association of dental professionals organized to advance and promote the science of dentistry and oral healthcare.  *See Exhibit A,* at ¶7.  CDS is limited to Cook, Lake, and DuPage counties in Illinois with some 4,300 members.  *Id.*  CDS claims a common law trademark in the term CHICAGO DENTAL SOCIETY in Illinois, Colorado, and throughout the United States.  *Id.*, at 8.

CDS hosts annual meetings in Chicago for its members called the Chicago Dental Society Midwinter Meeting.  The Midwinter Meeting consists of various speakers and continuing dental education seminars.  The speakers authorize CDS to record and sell the seminars.  *Id.*, at ¶10.  However, CDS does not actually produce, record, market, or sell the recorded seminars.  Instead, CDS grants an independent third party, Digital Conference Providers, Inc. ("DCP"), the right to do so.  Specifically, in this matter, in December 2005, CDS granted DCP the exclusive right to produce, record, and sell audio CDs and CD ROMs containing the speakers and seminar presentations at the Midwinter Meeting (the "Midwinter Meeting Works").  CDS also allegedly licensed the use of the alleged common law CDS mark to DCP in connection with the sale of the Midwinter Meeting Works.  *Id.*, at ¶12.  On March 10, 2008, presumably solely for purposes of this lawsuit, DCP assigned to CDS "all of its rights, title, and interest under the Agreement and in any works thereunder, including any receivables from or amounts owed by ASI, for products created and distributed under the Agreement."  *Id.*, at ¶13.

ASI is incorporated in Colorado.  It sells approved and genuine seminar materials to third-parties.  In this matter, ASI purchased the Midwinter Meeting Works from DCP and resold them on its website at www.americanseminar.com.  DCP represented it had

the right to sell these materials per an agreement with CDS.  CDS members have purchased Midwinter Meeting Works from ASI.  *Id.*, at ¶15 and 16.  However, allegedly "ASI is not selling the product CDS authorized DCP to create and sell."  *Id.*, at 17.  By way of example, the Midwinter Meeting Works sold by ASI "do not include the original cover page of the handouts, which identifies the programs as CDS programs, and include a questionnaire which, among other things, invites purchasers to 'evaluate ASI employees.'"  *Id.*, at 18.

The Complaint further alleges that the ASI website and marketing materials "did not identify the origin of the" Midwinter Meeting Works, but *implied* that the recordings were ASI programs featuring ASI speakers.  *Id.*, at 19.  No representations supporting these allegations were specifically identified by CDS.  In addition, on September 14, 2007, per CDS's request, ASI voluntarily added the following statement to the ASI website, "ASI Dental Courses are produced by the Chicago Dental Society."  *Id.*, at ¶21.

On March 26, 2008, CDS filed this lawsuit arising out of the alleged conduct described above.  The three count complaint alleges that ASI, in selling the Midwinter Meeting Works, committed unfair competition under the Lanham Act §43(a), 15 U.S.C. §1125(a)(1).  However, as demonstrated below, the allegations above are insufficient to confer personal jurisdiction over ASI and fail to state a claim upon which relief can be granted under the Lanham Act.

### III.     ARGUMENT

### A.     This Court lacks personal jurisdiction over ASI.

CDS' complaint, as a whole, is subject to dismissal pursuant to Fed. Civ. R. 12(b)(2), for lack of personal jurisdiction over the defendant.  The complaint contains

very vague and limited allegations addressing personal jurisdiction in this district. Personal jurisdiction can be general or specific.   Federal due process requirements prescribe that nonresident defendants have sufficient minimum contacts with the forum state such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.E.d. 95 (1945). The standard of "minimum contacts" depends upon whether general or specific personal jurisdiction is alleged. *Vanguard Airlines,* 262 F.Supp.2d at 906 (citing *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir.1997).

General jurisdiction applies only when a nonresident defendant has had continuous and systematic general business with the forum state such that it demonstrates a purpose on the part of the defendant to avail herself of the protection of Illinois law.  Tamburo v. Dworkin  2007 WL 3046216 at 2 (N.D.Ill. 2007); citing *First Nat'l Bank v. El Camino Resources, Ltd.,* 447 F. Supp 2d 902, 906 (N.D.Ill. 2006).

Here, CDS alleges that "the Court has personal jurisdiction over Defendant because it conducts business in this district…"  *Complaint,* at ¶5.  However, CDS does not allege that ASI has continuous and systematic general business in Illinois, which it does not.  Later in the Complaint, CDS alleges that ASI resells the Midwinter Meeting Works through an interactive website.  Generally, the mere maintenance of a website, even an interactive one through which orders may be placed, is not sufficient in itself to establish general jurisdiction over a foreign defendant. *Tamburo v. Dworkin*, 2007 WL 3046216 at 2 (N.D.Ill. 2007); citing *Euromarket Designs, Inc. v. Crate & Barrel, Ltd.,* 96 F.Supp.2d 824, 933 (N.D. Ill. 2000).  There are no additional factual allegations that would tie ASI to this district.  Of note, the goods are shipped from Colorado.

CDS also alleges that this "Court has personal jurisdiction over Defendant… because Defendant's use of the mark CHICAGO DENTAL SOCIETY has damaged Plaintiff's business and goodwill in this judicial district." *Complaint*, at ¶5. This is also insufficient. The "effects doctrine" established by the U.S. Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), holds that personal jurisdiction over a defendant is proper when 1) the defendant's intentional tortious actions 2) expressly aimed at the forum state 3) causes harm to the plaintiff in the forum state, of which the defendant knows is likely to be suffered. The effects doctrine was applied in a trademark infringement case in *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, L.P.,* 34 F.3d 410, 411 (7th Cir. 1994). However, CDS's common law mark is not at issue in Counts I – III, as trademark infringement is not alleged nor is there any indication that CDS is a trademark rather than a trade association name. Based solely on these allegations as pled, with nothing more, this court does not have general or specific personal jurisdiction over ASI.

**B.    CDS fails to state a claim under the Lanham Act §43(a).**

In order to have a claim dismissed under Rule 12(b)(6) the moving party must show that plaintiffs complaint fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint, not the merits. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe all allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d 459, 461 (7th Cir. 1993); *Perkins v.*

*Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991). However, to be a cognizable claim, the factual allegations contained within a complaint must raise a claim for relief "above the speculative level." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).   As demonstrated below, CDS's three count complaint fails to state a cognizable claim and is subject to dismissal pursuant to Rule 12(b)(6).

CDS alleges a common law trademark in CHICAGO DENTAL SOCIETY. However, the complaint does not allege that ASI infringed on its mark.   Rather, the allegation is that ASI asserted false representations of fact and that ASI engaged in "reverse passing off."   As demonstrated below, neither of these claims are cognizable even assuming the allegations are true.

### i.    CDS' alleged claim of false representation of fact is barred by the *Coty* Rule.

The first count in the complaint alleges a violation of 15 USC §1125(a)(1) for false representation of fact.   CDS alleges that ASI, in selling the Midwinter Meeting Works it purchased from DCP at retail, creates a false impression of affiliation, connection or association with CDS.   This claim on its face is subject to dismissal pursuant to the Supreme Court's holding of *Prestonettes v. Coty*, 264 U.S. 359 (1924) which gave rise to the "first sale exception" defense to a claim of trademark infringement.

Under the first sale exception, resale by the first purchaser of the original trademarked item is generally neither trademark infringement nor unfair competition. *Id.*, at 368 - 369.  In *Coty*, the defendant was reselling toilet powders, upon adding a binder, as a repackaged different product but did use "Coty" mark in notifying purchasers that the goods were repackaged.  So comes the rule that,

When the public has adequate notice that the purchaser has repackaged the trademarked item, then the dangers of consumer confusion and trademark dilution are minimized. Absent this notice, the trademark holder risks being associated with a product that is not of the same quality as the original trademarked item. In order to properly protect trademark rights, this limit to the first sale doctrine is necessary.

*Brilliance Audio, Inc. v. Haights Cross Communications, Inc.*, 474 F.3d 365 (6th Cir. 2007); citing *Coty, supra.* The 7th Circuit said in *Bretford Mfg., supra,* "It is not clear what's wrong with reselling someone else's goods, if you first buy them at retail." *Bretford Mfg. Inc.*, 419 F.3d at 580.

There are two situations where first sale exception does not apply, only one of which has been addressed by this Circuit. The first situation is when the notice that the item has been repackaged is inadequate. *Haights Cross,* at 369; citing *Enesco Corp. v. Price/Costco Inc.,* 146 F.3d 1083, 1085-86 (9th Cir.1998). *See* also, *Bulova Watch Co. v. Allerton Co.,* 328 F.2d 20, 23 (7th Cir. 1964)(while the defendants are entitled to make a proper collateral reference to the source of the movement, without use of the trademark 'BULOVA' as such, any use of the trademark itself in connection with defendants' product must be in such a way that the public is not deceived -- A complete and full disclosure is required).

The second exception, while not yet adopted by the 7th Circuit, is "when an alleged infringer sells trademarked goods that are *materially different* than those sold by the trademark owner." *Id.*, citing *Davidoff & CIE, S.A. v. PLD Int'l Corp.,* 263 F.3d 1297, 1302 (11th Cir.2001). However, even if the 7th Circuit were to adopt this exception it would not apply in this instance.

Here, ASI rightfully purchased the materials from an authorized retailer of the Midwinter Meeting Works, DCP. Therefore, any resale by ASI would be protected by

the *Coty* Rule absent the application of one of the exceptions.  CDS alleges that ASI repackaged the product and is not selling same product CDS authorized DCP to create and sell.  *Complaint,* at ¶15 and 16.  Further, that the materials placed ASI's name on them and removed CDS's name.  *Complaint*, at ¶15.  Accordingly, CDS effectively pled itself out of the first exception to the *Coty* Rule and it does not apply in this case. Based solely on these allegations, the public has adequate notice that the Midwinter Meeting Works have been repackaged by ASI and CDS is not the sole source of the goods.  The risk of consumer confusion is eliminated.

This Circuit has not adopted the second exception nor has CDS even pled this exception.  Even so, the exception would not apply in this instance.  CDS alleges that "ASI did not include the original cover page of the handouts…and now includes a questionnaire" in the sale of the goods.  *Id*., at ¶18.  Certainly the placement of a cover page and questionnaire could not qualify as a material change even if the exception applied in this Circuit.  *Haights Cross Communications, Inc.*, 474 F.3d 370 (To be material, a difference must be one that consumers consider relevant to a decision about whether to purchase a product).

The allegations in the Complaint establish the application of the first sale exception defense to the alleged Lanham Act claim.  Accordingly, CDS fails to state a cognizable claim against ASI upon which relief can be granted.  Count I of the Complaint must be dismissed with prejudice pursuant to Rule 12(b)(6).

### ii.    Count II is not a cognizable claim of "reverse passing off."

The second count alleges false designation of origin under §43(a) of the Lanham Act (15 USC §1125(a)(1)) arising out of ASI's sale of the Midwinter Meeting Works,

otherwise alleged as "reverse passing off." *Complaint,* at ¶31 – 36.   In order to establish a *prima facie* false designation of origin claim under § 43(a), a Plaintiff must establish that: (1) Defendants used a false designation of origin or false description or representation in connection with goods or services, (2) Defendants caused such goods or services to enter into commerce, and (3) Plaintiff believes it will be damaged as a result.  *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.,* 906 F.2d 1202, 1204 (7th Cir.1990).

While both traditional palming off and reverse palming off involve the misappropriation of another's talents, "the gravamen of the harm in a reverse palming [off] case is that 'the originator of the misidentified product is involuntarily deprived of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." *Hoopla Sports and Entertainment, Inc. v. Nike, Inc.*, 947 F.Supp. 347, 352 (N.D.Ill. 1996).   A claim of reverse passing off has three elements: (1) the defendant used a false designation of origin, or a false description or representation, in connection with goods or services; (2) the defendant caused the goods or services to enter interstate commerce; and (3) the plaintiff is a person "who believes that he or she [is or] is likely to be damaged as a result thereof." *Id.*

The U.S. Supreme Court decision of *Dastar Corp. v. Twentieth Century Fox*, 539 U.S. 23 (2003) bars CDS's reverse passing off claim.  The *Dastar* decision considerably narrowed the scope in the Lanham Act §43(a) claim as a device to challenge "reverse passing off" when it occurs in the context of false credit for creating the intellectual property content of a product, such as a false claim authorship of book or movie or false

claim of invention.  McCarthy on Trademarks §25:6.  The *Dastar* held "Section 43(a) of

the Lanham Act does not prevent the unaccredited copying of an uncopyrighted work."

*Id.*, at 23.  In so holding the Court stated,

> In sum, reading the phrase "origin of goods" in the Lanham Act in
> accordance with the Act's common-law foundations (which were *not*
> designed to protect originality or creativity), and in light of the copyright
> and patent laws (which *were*), we conclude that the phrase refers to the
> producer of the tangible goods that are offered for sale, and not to the
> author of any idea, concept, or communication embodied in those goods.
> Cf. 17 U.S.C. § 202 (distinguishing between a copyrighted work and "any
> material object in which the work is embodied"). To hold otherwise would
> be akin to finding that § 43(a) created a species of perpetual patent and
> copyright, which Congress may not do. *Dastar*, 539 U.S. at 37, citing
> *Eldred v. Ashcroft,* 537 U.S. 186, 208, 123 S.Ct. 769, 154 L.Ed.2d 683
> (2003).

The right question, as *Dastar* holds, is whether the consumer knows who has produced

the finished product.  *Bretford Mfg.*, 419 F.3d at 581.

In *Bretford,* the court dismissed the plaintiff's Lanham Act claim for false

designation of origin based on the *Dastar* decision finding that even though the legs of

the table sold by the defendant were that of the plaintiff's, the Lanham Act does not

admonish such conduct.  The *Bretford* court went on to note that

> The portion of § 43(a) that addresses reverse passing off is the one that
> condemns false designations of origin. "Origin" means, *Dastar* holds, "the
> producer of the tangible product sold in the marketplace". 539 U.S. at 31,
> 123 S.Ct. 2041. As far as Dallas was concerned, the table's "origin" was
> Smith System, no matter who made any component or subassembly.  *Id.*,
> at 581.

ASI purchased the Midwinter Meeting Works from DCP and allegedly resold

goods that were different from that CDS authorized DCP to sell.  *Complaint,* at ¶14 and

17.  ASI allegedly sells the goods with an ASI cover page and a questionnaire.  In this

conduct, CDS claims that ASI falsely designates the origin of the goods as its own.

However, under the *Dastar* decision the Lanham Act does not prevent such alleged conduct.   Copyright law is designed to protect creators of their literal works, not trademark law.  Here, there is no alleged copyright claim and no allegation that a valid copyright exists or registered with the U.S. Copyright Office.  Based on the *Dastar* and *Bretford* decisions, CDS has not stated a cognizable claim of "reverse passing off."   As the *Bretford* court stated at page 581 of the opinion, "Once Bretford sold its goods, it had no control over how customers used their components: the Lanham Act does not include any version of the "derivative work" right in copyright law." See 17 U.S.C. § 106(2).

Count III is an Illinois common law breach of contract claim for a total stated value of $3,145.00.  Without Counts I and II, the claim should be dismissed for lack of subjection matter jurisdiction.  There is no federal question in the common law claim and diversity jurisdiction fails based on the jurisdictional minimum of $75,000.00.  Accordingly, this claim should also be dismissed.

## IV.    CONCLUSION

CDS's complaint is subject to dismissal pursuant to Rule 12(b)(2) for lack of personal jurisdiction over ASI.  Further, CDS fails to state a claim upon which relief can be granted under the Lanham Act.  The first sale exception, or *Coty* Rule, bars Count I CDS's alleged claim of false representation of fact.  The *Dastar Corp. v. Twentieth Century Fox*, 539 U.S. 23 (2003) opinion bars Count II of the complaint.  The Lanham Act does not protect CDS against the conduct alleged in the complaint.

WHEREFORE, Defendant American Seminar Institute respectfully requests this Honorable Court to dismiss the Complaint as a whole on grounds of lack of personal

jurisdiction, or in the alternative, dismiss Counts I and II with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/ Brendon P. Friesen
One of the Attorneys for Defendant
American Seminar Institute

P. Stephen Fardy
Brendon P. Friesen
SWANSON, MARTIN & BELL, LLP
330 North Wabash, Suite 3300
Chicago, Illinois  60611
(312)321-9100
(312)321-0990 fax

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 16, 2008 a copy of the foregoing ***Memorandum in Support of Defendant American Seminar Institute's Motion to Dismiss*** was filed electronically.  Notice will be sent to all parties via the Court's electronic filing system.

Respectfully submitted,


s/ Brendon P. Friesen
One of the Attorneys for Defendant
American Seminar Institute


P. Stephen Fardy
Brendon P. Friesen
SWANSON, MARTIN & BELL, LLP
330 North Wabash, Suite 3300
Chicago, Illinois  60611
(312)321-9100
(312)321-0990 fax